IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2020 Session

## ELIZABETH KERR ET AL. v. LYDIA HENDERSON ET AL.

**Appeal from the Chancery Court for Johnson County**
No. 7226      John C. Rambo, Chancellor

_____

### No. E2020-00112-COA-R3-CV

_____

In this case involving the inheritance of an investment account, the three plaintiffs filed a complaint in September 2016, asserting, *inter alia*, that a letter executed by their father prior to his 2007 death had operated to create an express trust concerning the account, for which their stepmother had acted as trustee with the understanding that the plaintiffs were to be the beneficiaries of the account after her death. The plaintiffs alternatively sought imposition of a constructive trust. The plaintiffs' stepmother, who is the subject decedent in this action, had died in April 2016. The plaintiffs initially named as defendants the co-executors of the decedent's estate, as well as the financial institution holding the investment account. The trial court subsequently entered agreed orders to dismiss the financial institution as a party and to substitute as defendants the decedent's three adult children from a previous marriage. Upon competing motions for summary judgment and following a hearing, the trial court granted summary judgment in favor of the plaintiffs, finding that an express trust had been created by the writings of the plaintiffs' father and that, alternatively, a constructive trust should be imposed based on the combined writings and actions of the plaintiffs' father and the decedent. The defendants filed a motion to alter or amend the judgment, which the trial court denied following a hearing upon finding in part that new evidence submitted by the defendants should not be considered. The defendants have appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Mark W. McFall, Johnson City, Tennessee, for the appellants, Lydia Henderson, Scott Douglas, and Benjamin Douglas.

Andrew T. Wampler and John R. Graham, Kingsport, Tennessee, for the appellees, Elizabeth Kerr, Victoria McCoy, and Angela Sturdivant.

**OPINION**

I.  Factual and Procedural Background

The plaintiffs, Elizabeth Kerr, Victoria McCoy, and Angela Sturdivant (collectively, "Plaintiffs"), initiated this action by filing a complaint on September 30, 2016, seeking declaratory judgment in the Johnson County Chancery Court ("trial court") that the writings and actions of their father, Edwin Robinson Sturdivant, and stepmother, Mary Foote Sturdivant ("Decedent"), had operated to create an express trust related to an investment account with Raymond James Financial, Inc. ("the Account"). Plaintiffs alternatively asked the trial court to impose a constructive trust. Plaintiffs originally named as defendants Raymond James Financial, Inc. ("Raymond James"), and the two co-executors at that time of Decedent's estate, Jeannie Countiss and Karla Prudhomme (collectively, "Co-Executors"). The trial court subsequently dismissed Raymond James from this action without prejudice by agreed order. Upon Co-Executors' resignation from representation of Decedent's estate, the trial court entered an order on May 10, 2019, *inter alia*, substituting Decedent's three children, Lydia Henderson, Scott Douglas, and Benjamin Douglas, as defendants in this matter (collectively, "Defendants").

A central issue on appeal is whether the trial court erred by finding that evidence presented by Defendants for the first time with their Tennessee Rule of Civil Procedure 59.04 motion to alter or amend the court's summary judgment order did not warrant consideration as newly submitted evidence. At the time of the trial court's August 2019 summary judgment order, the facts found by the trial court had not been challenged by any evidence presented prior to the summary judgment hearing. The trial court specifically found as follows:

> Plaintiffs are the adult children of Edwin Sturdivant ("Edwin"). Edwin married Mary Foote Sturdivant [("Decedent")] around 1975. [Decedent] had three children from her first marriage, Lydia Douglas Henderson, Scott Douglas, and Ben Douglas.
>
> Sometime before 2000, Edwin opened an investment account with Raymond James in Memphis, Tennessee ("the Account"). During the marriage of Edwin and [Decedent], Edwin kept the Account as separate property in his name alone.

2

As of June of 2000, the Account held various state and municipal bonds with a face value of approximately One Million Dollars ($1,000,000.00).

Edwin's Last Will and Testament was dated June 20, 2000. It states, "I bequeath to Mary Sturdivant [Decedent] one thousand Tennessee bonds valued in total at face, not market value, at $1 million. She shall have the right to pick the ones which best fit her needs." Edwin's Last Will and Testament did not mention any of [Decedent's] natural children.

In March 2004, Edwin wrote a letter to [Decedent] instructing her to draft her own Last Will and Testament leaving the funds within the Account, their house located at 430 Cedar Street in Mountain City, and any additional income from the Account saved by [Decedent] to Edwin's natural children with a reference to his grandchildren.

Edwin died on September 12, 2007. On August 22, 2008, an Agreed Order was entered by the Johnson County Chancery Court, Probate Division, closing the Estate of Edwin Sturdivant. The August 22, 2008 Agreed Order found in-part that [Decedent] received all of the bonds owned or held on the date of distribution in partial satisfaction of the bequest made within Edwin's Last Will and Testament.

The bonds bequeathed to [Decedent] have been traced and remain in the Account.

Two months after Edwin died, Plaintiff Elizabeth Kerr received a letter from [Decedent] stating that [Decedent] had received a statement from Raymond James and that she would continue to carry a personal liability umbrella policy to cover the one million dollars in the Account.

On May 13, 2015, Elizabeth Kerr wrote a letter to [Decedent] asking [Decedent] to designate Edwin's three natural children as beneficiaries of the Account to avoid probate. In August of 2015, [Decedent] sent each of the Plaintiffs a cover letter and a Raymond James Transfer On Death Form to be completed by the Plaintiffs as beneficiaries of the Account.

The letter from [Decedent] to Elizabeth stated, "Hope this will allay some of your anxieties." The letter from [Decedent] to Victoria McCoy

3

stated, "There's no rush since I'll be gone for several weeks toward the end of the month and won't get this back to them until I get back."

Plaintiffs each completed and returned Transfer On Death Forms to [Decedent] around August or September of 2015. Raymond James never received the Transfer On Death Forms.

Edwin's 2004 letter is consistent with the written statements made by [Decedent] to Elizabeth Kerr in 2004, 2007, and 2015; to Victoria McCoy in 2015; and to Angela Sturdivant in 2015. The 2004 letter and the actions of Edwin and [Decedent] indicate their mutual desire for the bonds to transfer to Plaintiffs upon [Decedent's] death.

All the actions of [Decedent] indicate that it was her intent to hold the Account for the Plaintiffs.

[Decedent] attempted to comply with the 2004 letter by sending the Raymond James Transfer On Death Forms. A mistake occurred during the attempt when the Transfer On Death Forms were lost in the mail or misplaced.

[Decedent] died testate on April 13, 2016. [Decedent's] Last Will and Testament did not mention the Account, Transfer On Death forms, or name specifically the plaintiffs as beneficiaries or bequeathing this account to them.

[Decedent's] Will was probated on April 21, 2016 and her Estate remains open.

(Paragraph numbering omitted.)

Co-Executors, represented by attorney George T. Wright, filed an answer on January 6, 2017, asserting as affirmative defenses *res judicata* relative to the conclusion of Mr. Sturdivant's estate and "specific estoppel" as to Ms. Kerr due to her former role as co-executor of her father's estate.[1] On February 23, 2018, Co-Executors filed a motion for partial summary judgment, requesting that Decedent's residence be released from any

---

[1] As the parties have noted on appeal, Ms. Kerr is a licensed attorney and a sitting state appellate court judge in the state of Texas.

claim asserted by Plaintiffs, who had averred in their complaint that the residence was included in the purported express trust or should be in the constructive trust with the Account. Upon Plaintiffs' response stating that they did not contest the release of the residence, the trial court entered an order granting partial summary judgment to Co-Executors and releasing the residence from the reach of this action on July 13, 2018.

Following the trial court's *sua sponte* placement of this matter on its trial docket and a subsequent agreed order continuing proceedings, the trial court entered an agreed scheduling order on November 30, 2018. The court set trial for May 9, 2019; a discovery deadline of April 1, 2019; and a deadline for dispositive motions of December 31, 2018. On December 27, 2018, Co-Executors filed a motion for summary judgment, again arguing that this action was precluded by the administration and closing of Mr. Sturdivant's estate. As to the letters attached to Plaintiffs' complaint and presented as evidence of a trust, Co-Executors stated in their summary judgment motion: "Assuming that all of the letters presented are genuine and for the purposes of this Motion admitted, the same could not and did not act as addendums or codicils to the Will of Edwin Sturdivant." Co-Executors attached to their motion probate documents related to Mr. Sturdivant's estate, including an August 2008 agreed order entered by the Johnson County Probate Court ("probate court") "construing and interpreting" Mr. Sturdivant's will; a letter from Decedent to Ms. Kerr that had been attached to Plaintiffs' complaint; and a copy of the trial court's partial summary judgment order concerning the residence.

Plaintiffs filed their motion for summary judgment on December 31, 2018, asserting that "there is no dispute as to any material fact and the undisputed facts establish the creation of a trust under Tennessee law so that the funds from an account of Edwin Sturdivant pass to Plaintiffs." In addition to the documents noted by the trial court in its factual findings, which had also been attached to the complaint, Plaintiffs attached individual affidavits respectively executed by each plaintiff. Plaintiffs also filed a response to Co-Executors' motion for summary judgment, arguing, *inter alia*, that *res judicata*, collateral estoppel, and "specific estoppel" as to Ms. Kerr were inapplicable.

On February 14, 2019, Co-Executors filed affidavits executed by Ms. Henderson and Mary Sturdivant's friend and former housekeeper, Sylvia Denise Pennington, in support of their motion for summary judgment. Plaintiffs subsequently filed a motion to strike these affidavits as untimely, as well as a response to Co-Executors' summary judgment motion. Co-Executors and Plaintiffs then filed cross-replies.

The trial court conducted a hearing on March 8, 2019, concerning the summary judgment motions and a companion motion for substitution of parties in the probate action for Decedent's estate. Following the hearing, Co-Executors filed an amended

motion for summary judgment on March 25, 2019, restating their statement of undisputed material facts. On May 6, 2019, Plaintiffs filed an amended statement of undisputed material facts. On the same day, Defendants, acting through attorney Laurel Farrell,[2] filed a motion to strike Plaintiffs' entire amended statement of undisputed facts, asserting that the statement was precluded by the dead man's statute, pursuant to Tennessee Code Annotated § 24-1-203, because it "contain[ed] statements regarding transactions with two decedents, namely, Mary Foote Sturdivant and Edwin Sturdivant."[3] Plaintiffs filed a response objecting to the motion to strike, asserting in part that Defendants had waived the dead man's statute by presenting affidavits that purported to convey statements made by Decedent.

In its May 10, 2019 order approving the substitution of Defendants as the real parties in interest in place of Co-Executors, the court also noted its approval in the probate case of Scott Douglas as the executor of Decedent's estate.[4] The court also, *inter alia*, granted a motion that had been filed by Co-Executors to admit their response to a request for admissions and accordingly allowed Plaintiffs additional time to file an amended motion for summary judgment. The court noted that attorney Farrell had entered an appearance to represent Defendants in this action and to represent Scott Douglas as the executor of Decedent's estate in the probate court.

Following a hearing conducted on July 26, 2019, the trial court entered its order granting summary judgment in favor of Plaintiffs on August 19, 2019. The court stated the following findings and conclusions of law in pertinent part:

---

[2] The motion to strike indicates that it was filed by "Defendants" but does not clarify that it was filed by Decedent's children, whom the trial court had undisputedly approved as substituted defendants in place of Co-Executors during the March 8, 2019 hearing. We note that the motion included a certificate of service to Co-Executors through their counsel, Mr. Wright.

[3] Tennessee Code Annotated § 24-1-203 (2017), commonly known as the "dead man's statute," provides:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.

*See Holliman v. McGrew*, 343 S.W.3d 68, 72 (Tenn. Ct. App. 2009).

[4] Because Scott Douglas and Benjamin Douglas share the same surname, we will refer to them throughout this opinion by their first and last names. No disrespect is intended.

An express trust was created by Edwin [Sturdivant's] Last Will and Testament together with Edwin's 2004 letter, and the corpus of the express trust were the funds within the Raymond James Account. The Plaintiffs have sufficiently established that the grantor, Edwin, intended to create a trust through his writings. The Plaintiffs have also established that [Decedent] served as trustee, and accepted these obligations through her writings. Finally, the Plaintiffs have shown that the corpus of the trust, being the Raymond James Account, and the beneficiaries of the trust, being Edwin's natural children, were each sufficiently established by Edwin's writings.

In addition and in the alternative, a constructive trust was created by Edwin and [Decedent's] actions and writings regarding the Account. This constructive trust was consistent with Edwin's Last Will and Testament. Through their actions and writings, both Edwin and [Decedent] indicated their mutual desire for the Account to transfer to the Plaintiffs upon [Decedent's] death. All the actions of [Decedent] indicated that it was her intent to hold the Account property for Plaintiffs. Though the Transfer On Death Forms were not received by Raymond James, [Decedent] substantially complied with requirements to change the beneficiary of the Account by sending the forms, receiving executed forms, and following up with the Plaintiffs asking them to send the necessary information for that purpose. [Decedent] was fully attempting to comply with Edwin's 2004 letter and there was a mistake in that the Transfer On Death forms were lost or misplaced. Equity therefore requires that a constructive trust be created.

Defendants have waived the dead man's statute by their prior filings regarding [Decedent's] statements. Regardless of the waiver, the Court is not relying on Edwin or [Decedent's] oral statements in making its Rulings. The Court is relying on Edwin and [Decedent's] writings, which are undisputed statements, and on [Decedent's] actions. The dead man's statute is narrowly construed and the reliability and authenticity of the submitted letters written by Edwin and [Decedent] are not in question. The dead man's statute does not operate to exclude the material facts in this matter.

(Paragraph numbering omitted.)

Defendants, now represented by their current counsel, timely filed a Tennessee Rule of Civil Procedure 59.04 motion to alter or amend the judgment, attaching multiple

exhibits and asserting, *inter alia*, that they were presenting "newly offered evidence," including, *inter alia*, a forensic document examiner's report and several affidavits. In this motion, Defendants for the first time questioned the authenticity of the letters written by Decedent concerning transfer-on-death forms, for which the trial court had found "the reliability and authenticity" to be "not in question." Defendants also argued that the trial court had erred by failing to address Defendants' theories of *res judicata* and collateral estoppel and by relying on two appellate decisions. Plaintiffs filed a response objecting to the motion to alter or amend and a motion to strike what they asserted were inadmissible portions of the affidavits submitted by Defendants.

Following a hearing conducted on December 10, 2019, the trial court entered an order on December 27, 2019, denying Defendants' motion to alter or amend upon determining that Defendants' supplemental evidence should not be considered, that no change in the law warranted alteration of the judgment, and that the judgment was not precluded by *res judicata* or collateral estoppel. The trial court also denied Plaintiffs' motion to strike portions of Defendants' affidavits upon finding the motion to be moot.

Defendants timely appealed. The trial court subsequently entered an agreed order allowing a Raymond James representative to invest the Account funds in ninety-day treasury bills on a rolling basis pending resolution of this appeal.

## II. Issues Presented

On appeal, Defendants have presented nine issues in their statement of the issues but have subdivided their argument into only four sections, two of which address the standard for considering newly offered evidence submitted in conjunction with a Tennessee Rule of Civil Procedure 59.04 motion to alter or amend. These sections mirror approximately the arguments posited by Defendants in their Rule 59.04 motion. In their responsive brief on appeal, Plaintiffs note that Defendants have referenced solely the discretionary standard of review applicable to a Rule 59.04 motion and assert that Defendants have framed their appellate argument under the overarching issue of whether the trial court erred in denying the Rule 59.04 motion without properly raising any additional issues related to the grant of summary judgment. Upon careful review, we agree with Plaintiffs on this point.[5] Below, we have restated and reordered the issues raised by Defendants to categorize sub-issues within the applicable issues raised in Defendants' Rule 59.04 motion and argued in the argument section of their appellate brief:

---

[5] Defendants did not file a reply brief.

Overarching Issue: Whether the trial court erred by denying Defendants' Tennessee Rule of Civil Procedure 59.04 motion to alter or amend the judgment.

1. Whether the trial court erred by declining to find that Plaintiffs' motion for summary judgment was precluded by *res judicata* or collateral estoppel.

2. Whether the trial court erred by declining to consider the newly offered evidence presented by Defendants in support of their motion to alter or amend the judgment.

   A. Whether the trial court failed to properly consider and apply the five elements of the analysis under *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000), for newly offered evidence in support of a motion to alter or amend the judgment.

   B. Whether the trial court erred by finding that the newly offered evidence submitted by Defendants was not new evidence and was reasonably available prior to the summary judgment hearing.

   C. Whether the trial court erred by finding unsatisfactory the Defendants' explanations as to why the newly offered evidence could not have been produced earlier.

   D. Whether the trial court erred by finding that Defendants did not act with due diligence in presenting the newly offered evidence.

3. Whether the trial court's reliance on *Ellis v. Ellis*, 1990 WL 19684 (Tenn. Ct. App. Mar. 6, 1990), and *Brunson v. Gladish*, 125 S.W.2d 144 (Tenn. 1939), was misplaced in ruling that an express trust was created in its order granting summary judgment in favor of Plaintiffs.

Defendants also raise a general issue stated as, "Whether the trial court erred in finding that there was no error in its Order Granting Plaintiffs' Motion for Summary Judgment that would justify altering or amending the Judgment." However, as noted

9

above, Defendants cite solely the discretionary standard of review applicable to a grant or denial of a Rule 59.04 motion and do not address the standard of review applicable to a Tennessee Rule of Civil Procedure 56 grant of summary judgment. Defendants also confine their argument concerning the trial court's finding of an express trust to the issues raised in their Rule 59.04 motion regarding the trial court's reliance on *Ellis* and *Brunson*, and they do not address the trial court's alternative finding that a constructive trust should be imposed at all.

We therefore find that any issue concerning the trial court's grant of summary judgment based on its findings of an express and constructive trust, apart from those issues raised in Defendants' Rule 59.04 motion and argued in their appellate brief, have been waived by Defendants. Tennessee Rule of Appellate Procedure 27(a)(7)(A) provides that an appellant's brief must contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]" As our Supreme Court has explained, "[a]n issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). Moreover, "[i]t is not the function of the appellate court to research and construct the parties' arguments." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006).

## III. Standard of Review

"We review a trial court's denial of a Tenn. R. Civ. P. 59.04 motion to alter or amend a judgment for abuse of discretion." *Robinson v. Currey*, 153 S.W.3d 32, 38 (Tenn. Ct. App. 2004) (quoting *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003)). As our Supreme Court has elucidated concerning the abuse of discretion standard of review:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct.

App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010).

To the extent that we may consider the trial court's underlying grant of summary judgment, we note that such is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348, [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically

could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014) (footnote omitted).

IV. *Res Judicata* and Collateral Estoppel

Defendants contend that the trial court erred by declining to find that a grant of summary judgment in favor of Plaintiffs was precluded by *res judicata* (claim preclusion) or collateral estoppel (issue preclusion) based on the conclusion of the probate proceedings related to Mr. Sturdivant's estate. Defendants argue that because issues concerning the distribution of Mr. Sturdivant's estate included in part the same funds as those in the Account, any claim of an express or constructive trust involving those funds should have been precluded in the instant action. Plaintiffs counter that the trial court properly found that the claims and issues involved in this action were not resolved by the conclusion of Mr. Sturdivant's estate because Plaintiffs never disputed that Mr. Sturdivant had bequeathed the Account to Decedent and because the probate matter was an *in rem* action focusing on Mr. Sturdivant's estate rather than an action between the parties involved here. Upon careful review, we determine that the trial court properly found that neither *res judicata* nor collateral estoppel operated to bar the instant action.

Our Supreme Court has explained the doctrine and essential requirements of *res judicata* as follows:

The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit. *Creech v. Addington,* 281 F.W.3d 363, 376 (Tenn. 2009); *Richardson v. Tennessee Bd. of Dentistry,* 913 S.W.2d 446, 459 (Tenn. 1995) (quoting *Goeke v. Woods,* 777 S.W.2d 347, 349 (Tenn. 1989)). It is a "rule of rest,"

13

*Moulton v. Ford Motor Co.,* 533 S.W.2d 295, 296 (Tenn. 1976), and it promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits. *In re Estate of Boote,* 198 S.W.3d 699, 718 (Tenn. Ct. App. 2005); *Sweatt v. Tennessee Dep't of Corr.,* 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002).

The party asserting a defense predicated on res judicata or claim preclusion must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits. *Lien v. Couch,* 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998); *see also Lee v. Hall,* 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). A trial court's decision that a claim is barred by the doctrine of res judicata or claim preclusion involves a question of law which will be reviewed de novo on appeal without a presumption of correctness. *In re Estate of Boote,* 198 S.W.3d at 719.

*Jackson v. Smith,* 387 S.W.3d 486, 491 (Tenn. 2012).

Collateral estoppel, or issue preclusion, "has been described as an extension of the doctrine of res judicata" and is "applicable only when 'it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment. . . .'" *State v. Thompson,* 285 S.W.3d 840, 848 (Tenn. 2009) (quoting *Massengill v. Scott,* 738 S.W.2d 629, 631-32 (Tenn. 1987)). As with *res judicata,* the applicability of collateral estoppel is a question of law. *Mullins v. State,* 294 S.W.3d 529, 535 (Tenn. 2009). To succeed in establishing collateral estoppel, a party must demonstrate:

(1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Id.* at 535; *see also Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016).

The judgment upon which Defendants rely for *res judicata* and collateral estoppel purposes is the "Agreed Order Construing & Interpreting the Last Will & Testament of Edwin Robinson Sturdivant," entered by the probate court on August 22, 2008 ("2008 Probate Order"). Considering the bequest in Mr. Sturdivant's will to Decedent of $1,000,000.00 in assets, the probate court stated in pertinent part:

> Item One of [Mr. Sturdivant's] Will provides, in part, as follows:
>
> I bequeath to [my spouse, Mary Foote Sturdivant,] 1,000 Tennessee Bonds valued in the total at face (not market) value at $1,000,000.00. [My spouse] shall have the right to select among the bonds in my estate to pick the ones that best fit her needs.
>
> At the time of [Mr. Sturdivant's] death, he owned and possessed various state and/or municipal bonds issued by the state of Tennessee and/or one or more of its municipalities and/or agencies ("State Bonds") having a total par (or "face") value in excess of $1,000,000.00.
>
> At the time that [Mr. Sturdivant's] Will was admitted to probate, several of the State Bonds had been called and/or redeemed. As a result, the value of the State Bonds on the date the Will was admitted to probate was less than $1,000,000.00. Since the time that the Will was admitted to probate, additional State Bonds have been called and/or redeemed and, as such, the par value of the State Bonds remains under $1,000,000.00.
>
> At the time of [Mr. Sturdivant's] death, the bequest made to his spouse, Mary Foote Sturdivant, pursuant to Item One of the Will could have been satisfied from the State Bonds. However, market forces and/or other factors have prevented the satisfaction of such bequest in the manner as set forth in Item One at the time that bequests and/or distributions can be made from the Estate.
>
> The Will and specifically, Item One, should be construed in such a manner so as to provide for the distribution of $1,000,000.00 of Estate assets (consisting of the State Bonds, valued at par value, and such other assets as she may select) to Mary Foote Sturdivant. The testator clearly intended for Mary Foote Sturdivant to receive such a bequest.

15

There are sufficient assets in the Estate to fund the bequest to Mary Foote Sturdivant set forth above and to fund the specific bequests to the individuals named in Item Two of [Mr. Sturdivant's] Will.

(Paragraph lettering and footnote omitted.)

It is undisputed that the bonds within the Account at issue in the instant action were included in the above distribution to Decedent. The individuals named as beneficiaries of specific bequests in Item Two of Mr. Sturdivant's will were his three daughters, Plaintiffs in the instant action. The record demonstrates that in February 2009, each of the Plaintiffs respectively acknowledged receipt with the probate court of a specific distribution from Mr. Sturdivant's estate in the amount of $150,000.00. Ms. Kerr and her husband also filed respective acknowledgements with the probate court of their receipt of the residual estate as the "sole residuary distributees" under Mr. Sturdivant's will. In addition, Ms. Kerr, acting in her capacity as a co-executor with Decedent of Mr. Sturdivant's estate, agreed to entry of the August 2008 probate court order.

In its order granting summary judgment in favor of Plaintiffs, the trial court did not directly address Defendants' claims of *res judicata* and collateral estoppel. However, the trial court stated in its judgment denying Defendants' motion to alter or amend that in granting Plaintiffs' summary judgment motion and denying Defendants' summary judgment motion, the court's finding that *res judicata* and collateral estoppel were not applicable to the instant action had been "implied" in the summary judgment order. Upon Defendants' again raising these affirmative defenses in their post-judgment motion, the trial court expressly ruled that Plaintiffs' action was "not precluded by *res judicata* or collateral estoppel" because "[t]he elements adjudicated by the Court and legal theories are different from the probate proceedings involving the Estate of Edwin Sturdivant."

The trial court stated in its incorporated memorandum opinion in relevant part:

I did not believe that the principles of res judicata, estoppel, collateral estoppel as a result of the finality and adjudication of Ed Sturdivant's estate resulted in issue preclusion as to the cause of action asserted in this case. The elements adjudicated by the Court and the theories are different in the estate than they are in this case. This is about an alleged trust that was created and that issue was about what property was in the estate and whether folks received what they were supposed to receive from the estate. Plaintiffs [have] never disputed that [Decedent] was entitled to all that money and she could have used it all. Their argument in this case was it

16

was there for her, was hers, but if it was not used, it – she had an agreement and she went about fulfilling the agreement, promise to her husband, for the benefit of them, that those funds and accounts would go back to the plaintiffs.

We agree with the trial court on this issue.

Regarding the elements required for *res judicata* to apply, it is undisputed that the 2008 Probate Order was rendered by a court of competent jurisdiction and was a final judgment on the merits. *See Jackson,* 387 S.W.3d at 491. However, the parties involved in the probate matter were not identical to those involved in the instant action. As a co-executor of Mr. Sturdivant's estate, Ms. Kerr was a co-petitioner with Decedent, the other co-petitioner, acting on behalf of the estate. As beneficiaries of the portion of Mr. Sturdivant's will that was the subject of the 2008 Probate Order, Ms. Kerr, Decedent, and Ms. Kerr's husband were also in the position of respondents in the probate action. None of the parties other than Ms. Kerr involved in the instant action—not Ms. McCoy, Ms. Sturdivant, Ms. Henderson, Scott Douglas, or Benjamin Douglas—were parties to the 2008 Probate Order.

Defendants assert that Ms. McCoy and Ms. Sturdivant were parties to the prior action because they were beneficiaries of Mr. Sturdivant's estate who filed acknowledgments of specific distributions to them. We disagree. The prior action was not a will contest, and neither Ms. McCoy nor Ms. Sturdivant were parties to it. Arguably, as beneficiaries of Mr. Sturdivant's estate, Ms. McCoy and Ms. Sturdivant shared a certain privity of interest with Ms. Kerr in her role as respondent in the probate action. *See Collier v. Greenbrier Developers, LLC*, 358 S.W.3d 195, 199 (Tenn. Ct. App. 2009) ("[P]rivies are not only those who are so related by blood and law, but are those who are so related by reason of the facts showing an identity of interest." (quoting *Cotton v. Underwood*, 442 S.W.2d 632, 634-35 (Tenn. 1969)).

Defendants essentially argue that because Ms. Kerr, and by extension Ms. McCoy and Ms. Sturdivant, did not contest the will during the probate proceedings, they lost the opportunity to argue that an express trust had been created or a constructive trust should be imposed based on Mr. Sturdivant's 2004 letter, taken together with Mr. Sturdivant's will and the subsequent writings and actions of Decedent. This argument assumes that Plaintiffs' trust claims were in opposition to the probate court's interpretation of Mr. Sturdivant's will. We agree with the trial court and Plaintiffs that they were not. Plaintiffs have at no time claimed that Mr. Sturdivant did not bequeath the Account to Decedent.

17

As the trial court noted, "Plaintiffs [have] never disputed that [Decedent] was entitled to all that money and she could have used it all." In Mr. Sturdivant's 2004 letter to Decedent, he stated the following as relevant to the Account:

I thought I would update my last thoughts and wishes. You will get the house, furnishings cars etc., of course, plus $1,000,000 face value worth of tax free bonds. I had set this up before the federal income tax was lowered and now it may make less sense than investing in other income producing assets, as they are called. You might want to consider other types of bonds, stocks, preferreds etc. Anyway, getting tax exempts is how matters stand as of now. You can reshape your portfolio in the years ahead.

I don't know how much money will be left in our joint savings account. It will be between $100,000 and $65,000 depending on whether we bought a new Explorer and spent a lot on the Florida trip. Let's work from the lower figure and if it is more than that you'll have more to put in your pocket.

Ok, probate the will cheaply, you understand how important that is. It should not cost more than a thousand dollars tops. [Ms. Kerr] as co-executor is entitled to compensation for travel etc. that she may have to undertake in connection with probate. Work with her. You will get annually about $50,000 from the bonds and about $12,000 from SS. That should leave you very well off and allow you to save something each year to reinvest. This is important because inflation will erode your income and the value of the inheritance over time. As soon as the 6 month waiting period is over and you have your bonds, I want you immediately to make a will leaving the bonds, the house and whatever additionally you save in the future from that income to my children and grandchildren equally. You will probably have to maintain a separate account for this class of assets opposed to what you have inherited otherwise. If you get married again, have a pre-nup. agreement so he won't get any of my children's money.

In keeping with his last will and testament, Mr. Sturdivant in the 2004 letter indicated his intent to bequeath all of the Account assets to Decedent. Setting aside Mr. Sturdivant's mention of the house, which was not at issue following entry of the February 2018 order removing the house from consideration in this action, Mr. Sturdivant's instructions to Decedent to "make a will leaving the bonds . . . and whatever additionally you save in the future from that income to my children and grandchildren equally" indicated his wishes for the disposition of the Account and income earned from it upon the death of Decedent.

18

Mr. Sturdivant did not attempt via his 2004 letter to constrain Decedent's access to the Account or ability to utilize the funds therein during her lifetime. Neither the letter nor Plaintiffs' trust claim originating with the letter contradicted the interpretation of Mr. Sturdivant's will in the 2008 Probate Order.

For the same reasons, we do not find that "the same claim or cause of action was asserted in both" the probate action and the instant action. *See Jackson*, 387 S.W.3d at 491. Moreover, as Plaintiffs note, the subject of the probate action was Mr. Sturdivant's estate rather than a dispute between parties. *See In re Estate of Trigg*, 368 S.W.3d 483, 496 (Tenn. 2012) ("A probate proceeding is not an action between the parties, but rather an in rem action that focuses on the decedent's estate."). We determine that the trial court properly found that *res judicata* did not apply to bar the instant action. Furthermore, having determined that the trust claim at issue in this action was not an issue "raised, litigated, [or] decided" during the probate proceedings related to Mr. Sturdivant's estate, we conclude that the trial court also properly found that collateral estoppel did not apply to bar this action. *See Mullins*, 294 S.W.3d at 535.

V. Newly Submitted Evidence

Defendants also contend that the trial court erred by finding that the newly submitted evidence presented with their Tennessee Rule of Civil Procedure 59.04 motion to alter or amend should not be considered. Within this overarching contention, Defendants argue that the trial court erred by (1) failing to properly consider the elements set forth in *Harris v. Chern*, 33 S.W.3d 741, 744-45 (Tenn. 2000); (2) finding that the evidence presented with the motion to alter or amend was not new evidence because it was reasonably available prior to the time of the summary judgment hearing; (3) finding Defendants' explanations as to why the evidence was not produced sooner to be unsatisfactory; and (4) finding that Defendants did not act with due diligence in presenting the evidence offered with their motion. In response, Plaintiffs contend that the trial court properly declined to consider the newly submitted evidence because such evidence was available prior to the summary judgment hearings and partially supported Plaintiffs' theory of the case. Upon thorough review of the record and applicable authorities, we determine that the trial court did not abuse its discretion in declining to consider Defendants' newly submitted evidence.

At the outset, we note that in *Harris*, our Supreme Court adopted five factors to be considered within a balancing test when additional evidence is submitted by a party in support of a Tennessee Rule of Civil Procedure 54.02 motion to revise a grant of partial summary judgment that the court has certified as final as to that issue. *See Harris*, 33 S.W.3d at 744-45. The *Harris* Court specifically noted that it was not deciding "[t]he

question of what standard to apply in ruling on a Rule 59.04 motion to alter or amend" but stated that "many of the same considerations discussed herein would be applicable when a litigant submits additional evidence as part of a Rule 59.04 motion to alter or amend a summary judgment." *Id.* at 746 n.4. The High Court subsequently adopted the test delineated in *Harris* as applicable to review of additional evidence presented in support of a Rule 59.04 motion to alter or amend a summary judgment in *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). The *Stovall* Court set forth the following factors for consideration of a Rule 59.04 motion:

> When additional evidence is presented in support of such a motion, the trial court should consider the factors applicable to a motion to revise a partial summary judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure: [1] the moving party's effort to obtain the evidence in responding to the summary judgment; [2] the importance of the new evidence to the moving party's case; [3] the moving party's explanation for failing to offer the evidence in responding to the summary judgment; [4] the unfair prejudice to the non-moving party; and [5] any other relevant consideration.

*Stovall*, 113 S.W.3d at 721 (citing *Harris*, 33 S.W.3d at 744) (factor numbers added); *see Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 306 (Tenn. 2020) (approving the application of "the factors articulated in *Stovall*" "[b]ecause the motion to alter or amend relied on newly-submitted evidence").

The additional evidence submitted with Defendants' Rule 59.04 motion was comprised of the forensic document examiner's report, several affidavits, correspondence from Co-Executors' former counsel and from Defendants' former counsel, a 2010 Account statement appearing to show four deposits made by Decedent into the Account, a typed letter written by Decedent to a friend concerning a memorial service in honor of Mr. Sturdivant, a handwritten note from Decedent's personal files, and a 2008 Raymond James investment account application form completed by Decedent for an individual account. The affidavits were executed individually by Ms. Henderson and Scott Douglas; Sylvia Pennington, Decedent's former housekeeper; Angie Sutherland, a bank executive providing selected records of Decedent's accounts; Kimberly Pope, an insurance agent with State Farm Fire and Casualty Company, who had examined records concerning a personal liability umbrella policy obtained by Mr. Sturdivant and Decedent in 1993 and maintained by Decedent after her husband's death; and Janice A. Russell, Decedent's longtime personal attorney, who had drafted Decedent's two most recent wills. Prior to the summary judgment hearing, Co-Executors had filed previous versions of affidavits executed by Ms. Henderson and Ms. Pennington.

20

Defendants submitted the forensic document examiner's report in support of an allegation proffered for the first time in their Rule 59.04 motion that the three letters written by Decedent to the individual Plaintiffs purporting to accompany transfer-on-death forms may not have been authentic. The forensic document examiner, Steven G. Drexler, stated in his report that he had examined copies of the three letters that had been sent to him via electronic mail. Mr. Drexler also examined Decedent's electric typewriter ribbon used at the time that the letters were written. Mr. Drexler concluded in his report that there was a "strong probability" that the three letters had been produced by Decedent's typewriter but stated that there were "indications" that the "'Mary' signatures *may not have been* original 'wet' in signatures and may be the result of a cut-and-paste manipulation" on two of the three letters (emphasis in original). Mr. Drexler also noted that if he were able to examine the letters in their original form, "more definitive conclusions [could] be drawn as to the true history of these documents."

In finding that Defendants' newly submitted evidence should not be considered, the trial court, in its order denying the motion to alter or amend, stated in pertinent part:

> The evidence submitted by Defendants in support of their Motion was not new evidence and was reasonably available prior to the time the Summary Judgment Motions were argued. The explanations given by Defendants as to why the supplemental evidence could not have been produced earlier are not satisfactory. No request was made for additional time for discovery or to supplement their motions. Thus, the Defendants did not act with due diligence.

> The supplemental evidence offered by the Defendants should not be considered. Even if the supplemental evidence were to be considered, it would not change the Judgment. In fact, portions of the supplemental evidence support the Plaintiffs' legal positions.

> There was no change in the law since the Judgment was entered that would warrant altering or amending it. The Court also finds that there was no error in its prior ruling that would justify altering or amending the Judgment.

(Paragraph numbering omitted.) In its oral ruling incorporated into the order, the trial court elaborated in relevant part:

21

[O]n considering this supplemental evidence, and I think that's a better term for it than new evidence, on the Rule 59.04 Motion to alter or to amend a Judgment, in applying those factors, the case had been pending since September of 2016. So three months in 2016 clipped by, all of 2017, all of 2018, and I heard the arguments in July of '19. And I, basically, rolled out the red carpet for anybody to request if they needed more time. At that Hearing, everybody was ready. I don't – I push folks, but I want to adjudicate the case on the merits and allow everybody a fair opportunity to address issues pending in the court. These Affidavits, this evidence, and [Defendants' counsel's] to be commended for doing a yeoman's job, maybe, under a handicapped circumstance of he's coming in late, so to speak, to the case. So he's done everything he can to -- and he has represented his clients well. But the fact remains as what I have seen that [Defendants' counsel] has produced. I cannot think of an explanation as to why this could not have been produced in 2016, '17, 2018. Everybody knew what type of case they had. Everybody knew or should have had plenty of time to figure out what their evidence and testimony was . . . . And as the cases say, you can't just put out a little bit of your evidence and hope it defeats a summary judgment. If you have it, you need to show your cards, so to speak, and not keep trying to relitigate a summary judgment [m]otion. Tennessee courts are pretty clear summary judgments are important stages of a case. A case can be adjudicated [finally] at the summary judgment phase. There was the explanation on why this was not provided to the Court. All this evidence that they believe supports the defeat of the original summary judgment [m]otion was not produced earlier is not satisfactory. There have been multiple attorneys and I don't necessarily agree with the characterization that attorneys were not competent in the proceedings but the evidence was there to be had. This is not new evidence that has surfaced after the Hearing. There's not been a change in the law and I don't believe that I had an incorrect understanding of the law. No requests for additional time to do discovery prior to the summary judgment Hearing [were] made. As to the importance of the evidence, it -- I don't see the silver bullet that has been discovered, that this evidence is so convincing that it, in fairness to justice, it must be considered when the Court allegedly has that evidence now and did not have it in July, so I don't think the importance of the evidence is that significant. There [are] elements of that evidence, frankly, that support[] the plaintiffs' theory. So I don't think there is a likelihood that . . . the defendants have been unfairly prejudiced by what -- by the summary judgment proceedings prior in July. Applying the test on whether new evidence should be allowed, I

22

come down that the factors indicate that it is -- should not, and, therefore, the Court will not consider the new evidence.

Although the trial court did not expressly cite *Stovall* or *Harris* in its order, the factors considered by the trial court clearly mirrored the applicable *Stovall* factors. *See Stovall*, 113 S.W.3d at 721. The trial court essentially found that (1) prior to the summary judgment hearing, Defendants had not put forth sufficient effort to obtain the evidence they now sought to have reviewed, (2) the new evidence did not provide a "silver bullet" that would defeat the grant of summary judgment to Plaintiffs and actually supported Plaintiffs' claims to some extent, and (3) Defendants' explanation for why they had not produced the evidence prior to the summary judgment hearing was unpersuasive. *See id.* Although the trial court did not explicitly mention the fourth factor, unfair prejudice to Plaintiffs as the nonmoving party, the trial court did find that Defendants had not been unfairly prejudiced in part because they had requested no additional time for discovery prior to the summary judgment hearing. Likewise, we note that Plaintiffs were therefore not put on notice prior to the summary judgment hearing that Defendants were seeking or planning to submit additional evidence.

As to the fourth factor, Defendants assert that Plaintiffs would not have been prejudiced by the grant of Defendants' Rule 59.04 motion because upon setting aside its summary judgment order, the trial court could have directed the parties to "file new motions for summary judgment and new statements of undisputed material facts so the trial court could reconsider its prior ruling or proceeding to a trial after further discovery." To the extent that the trial court failed to consider the fourth *Stovall* factor concerning potential prejudice to Plaintiffs in considering Defendants' newly submitted evidence, *see Stovall*, 113 S.W.3d at 721, we find the omission to be harmless error. Defendants' reasoning in this regard ignores not only the time and expense involved in a second summary judgment proceeding for Plaintiffs but also the principle of finality in judgments and the corresponding requirements of readiness for summary judgment proceedings and compliance with discovery deadlines. *See Robinson v. Currey*, 153 S.W.3d 32, 39 (Tenn. Ct. App. 2004) ("The non-moving party must fully oppose a motion for summary judgment before it is granted rather than rely on Rule 59.04 to overturn a summary judgment after only weakly opposing the motion.").

Within its consideration of the *Stovall* factors, the trial court did find, as Defendants protest, that Defendants' newly submitted evidence had been reasonably available prior to the time of the summary judgment hearing; that Defendants' explanations as to why the evidence had not been produced at that time were unsatisfactory; and that, as a result, Defendants had not acted with due diligence in presenting the evidence offered with their motion. In support of their postulate that they

23

could not present their additional evidence at the time of the summary judgment hearing, Defendants primarily rely on the perceived close proximity of their substitution as the parties in interest in this action to the date of the summary judgment hearing and their alleged difficulty communicating with Co-Executors' counsel prior to their substitution.

Defendants assert that prior to their substitution as parties, they were unable, despite repeated attempts, to communicate effectively with Co-Executors' counsel and provide the information they sought to offer as added evidence. When Defendants' counsel presented this explanation during the Rule 59.04 hearing, the following exchange occurred with the trial court:

| Trial Court: | If I accept everything you said as true, is that a basis for the admissibility of new evidence on a summary judgment motion that's already been decided? |
|---|---|
| Defendants' Counsel: | I have not located any legal authority to that effect, but I believe that in this court's equitable jurisdiction it can look at that equity, the equities of the parties, and determine that there was a lack of fairness and inequity in how the summary judgment came about. |

On appeal, Defendants acknowledge that what they are intimating as, "ineffective assistance of counsel," or in this case, difficulty communicating with counsel who was actually representing Co-Executors at the time, is not a claim or a defense in a civil action. *See Welch v. Bd. of Prof'l Responsibility,* 193 S.W.3d 457, 465 (Tenn. 2006) ("While ineffective assistance of counsel is a proper ground for granting relief in a criminal case, there is no such constitutional guarantee to effective counsel in a civil case."). As Defendants note, this Court stated in *Thornburgh v. Thornburgh*, 937 S.W.2d 925, 926 (Tenn. Ct. App. 1996), that "there may be cases where the facts are so egregious that justice may require some relief" from ineffective assistance of counsel. However, in *Thornburgh*, this Court found that an attorney's alleged failure to pursue discovery procedures and failure to notify opposing counsel of the defendant's intent to testify, causing the exclusion of her testimony, did not rise to such an egregious level. *See id.*; *see also Morgan v. Krauss*, No. M2014-02035-COA-R3-CV, 2015 WL 5936918, at \*3-4 (Tenn. Ct. App. Oct. 12, 2015) (comparing the appellant's similar argument regarding counsel's performance to that in *Thornburgh* and reaching the same conclusion). We find even less cause for relief on the assertion of ineffective assistance of counsel in this case when Co-Executors' counsel was not representing Defendants during the timeframe

about which they complain and actually did file affidavits executed by Ms. Henderson and Ms. Pennington in February 2019.

We note also that Defendants were represented by retained counsel for several months prior to the summary judgment hearing. In ruling in favor of Defendants' substitution as parties during the hearing conducted on March 8, 2019, with entry of the resultant order on May 10, 2019, the trial court also approved the appearance of attorney Farrell to represent Defendants. Attorney Farrell subsequently acted on Defendants' behalf when filing a motion to strike Plaintiffs' amended statement of undisputed facts on May 6, 2019. Additionally, the evidence presented by Defendants with their Rule 59.04 motion includes correspondence from an attorney, Olen M. "Mac" Bailey, Jr., to Co-Executors' counsel, dated November 8, 2017, giving notice that he had been retained by Defendants and setting up a telephone call with Co-Executors' counsel, upon which he subsequently reported to Defendants in a letter also included in the newly submitted evidence.

Moreover, the trial court entered an agreed scheduling order on November 30, 2018, with a deadline for dispositive motions of December 31, 2018, and a discovery deadline of April 1, 2019. Defendants did not file a motion to intervene. When Defendants were substituted as parties in March 2019, they did not file a motion for permission to extend the discovery deadline or to continue the summary judgment hearing. Although Defendants have not provided a transcript of the March 2019 hearing, they have also not disputed the trial court's statement that it had "basically, rolled out the red carpet for anybody to request if they needed more time."

We agree with the trial court that the evidence presented with Defendants' Rule 59.04 motion reasonably could have been obtained prior to the summary judgment hearing and that Defendants' explanations for why it was not obtained and presented at that time were unavailing. *See Fuller v. Allianz Life Ins. Co. of N. Am.*, No. E2018-02267-COA-R3-CV, 2020 WL 830067, at *10 (Tenn. Ct. App. Feb. 19, 2020) ("[W]hen it is shown that the movant to alter or amend has knowledge and possession of the newly presented evidence before a motion for summary judgment is decided, and fails to present it the first time around without a compelling reason, the Rule 59.04 motion should be denied.").

The trial court also found that the importance of Defendants' newly submitted evidence did not weigh in favor of granting the Rule 59.04 motion because the additional evidence was unlikely to change the outcome and actually offered some support to Plaintiffs' theory of the case. Defendants argue that their additional evidence was important because it offered a "more objective picture of the relationship" between

25

Decedent and Mr. Sturdivant and Plaintiffs and because it "cast[] doubt on the genuineness of the three letters by which [Decedent] purportedly transmitted the [transfer-on-death] documents to the Plaintiffs."[6]  Concerning the relationships between Decedent and Mr. Sturdivant and between Decedent and Plaintiffs, we find no information in the additional evidence in this regard that precludes the trial court's relevant findings concerning Decedent's actions in attempting to follow the wishes of Mr. Sturdivant's 2004 letter.

As to the three 2015 letters that the trial court found to be authentically from Decedent to the three individual Plaintiffs, Mr. Drexler concluded in his report that by a "strong probability," all three had been produced by Decedent's typewriter.  Defendants base their questioning of the letters' authenticity on Mr. Drexler's finding of "indications" that the handwritten signature, "Mary," may not have been the "original 'wet'" signature on two of the letters but could have been "the result of a cut-and-paste manipulation."  Mr. Drexler's report included an attachment entitled, "Standard Terminology for Expressing Conclusions of Forensic Documents," promogulated by the Scientific Working Group of Forensic Document Examiners, in which a finding that "indications did/did not" was defined in relevant part as:

> a body of writing has a few features which are of significance for handwriting comparison purposes, and those features are in agreement/disagreement with another body of writing . . . . There is evidence which indicates (or suggests) that the John Doe of the known material may have/have not written the questioned material but <u>the evidence falls far short of that necessary to support a definite conclusion</u>.

(Emphasis added.)  Having examined emailed copies of the letters, Mr. Drexler noted in his report that if he were able to examine the letters in their original form, "more definitive conclusions [could] be drawn as to the true history of these documents."  However, Defendants have offered no theory as to how Plaintiffs would have managed to produce fraudulent letters on Decedent's typewriter and again, have not offered a

---

[6] In a separate argument section concerning the authorities cited by the trial court in its summary judgment order, Defendants in their brief assert that the trial court erred by finding that the Account funds could all be traced back to Mr. Sturdivant's separate property, noting the 2010 Account statement they proffered as additional evidence that reflected four deposits made by Decedent into the Account.  Given the trial court's determination that Mr. Sturdivant had bequeathed the Account to Decedent for her use during her lifetime and the fact that the 2010 statement should reasonably have been available to Defendants at the time of the summary judgment hearing, we do not find that consideration of this point, if raised as going toward the importance of the newly submitted evidence, would have affected the outcome of our analysis.

satisfactory explanation for why such an examination of the letters could not have been conducted prior to the summary judgment hearing.

Furthermore, we are guided by our Supreme Court's recent decision in *Harmon* upholding the trial court's denial of the plaintiffs' Rule 59.04 motion to alter or amend a summary judgment upon holding that "the trial court's decision in this case was within the range of acceptable alternative dispositions of the motion to alter or amend and was not an abuse of the trial court's discretion." *Harmon*, 594 S.W.3d at 298. In *Harmon*, a health care liability action, the plaintiffs "proffer[ed] causation testimony from a new expert witness" with their Rule 59.04 motion. *Id.* Both the trial court and this Court applied the *Stovall* factors for additional evidence submitted with a Rule 59.04 motion, which our Supreme Court found appropriate. *Id.* at 306. Although the trial court had found that the additional evidence would have been highly important to the plaintiffs' case, the trial court had denied the Rule 59.04 motion upon finding that the plaintiffs had squandered opportunities to present the evidence prior to summary judgment without satisfactory explanation and that unfair prejudice to the defendant would have resulted because the plaintiff had failed to seize "'numerous chances'" to submit the evidence and had not requested a time extension. *Id.* at 303-04.

Due to the importance of the additional evidence and what the majority found to be "'an absence of unfair prejudice,'" this Court reversed the trial court in a split decision. *Id.* at 304 (quoting *Harmon v. Hickman Cmty. Healthcare Servs.*, No. M2016-02374-COA-R3-CV, 2018 WL 3267080, at *9 (Tenn. Ct. App. June 29, 2018)). However, in the subsequent appeal to our Supreme Court, the High Court concluded that because "the essential question" under the discretionary standard of review was "whether the trial court's decision was 'within the range of acceptable alternative dispositions,'" the trial court had not abused its discretion and should be upheld. *Harmon*, 594 S.W.3d at 306-07 (quoting *Lee Med.*, 312 S.W.3d at 524).

In the case at bar, we emphasize that we agree with the trial court's finding that the newly submitted evidence was unlikely to change the outcome of this case. Given the trial court's findings concerning all of the *Stovall* factors, particularly Defendants' failure to provide a satisfactory explanation for failing to produce the newly submitted evidence prior to the summary judgment hearing, we determine that the trial court's decision not to consider the newly submitted evidence was within "'the parameters of the trial court's sound discretion.'" *See Harmon*, 594 S.W.3d at 307 (quoting *State v. McCaleb*, 582 S.W.3d 179, 198 (Tenn. 2019)).

## VI.  Trial Court's "Reliance" on *Ellis* and *Brunson*

Defendants also posit that the trial court erred by declining to alter or amend the judgment based on the court's allegedly faulty reliance on *Ellis v. Ellis*, 1990 WL 19684 (Tenn. Ct. App. Mar. 6, 1990), and *Brunson v. Gladish*, 125 S.W.2d 144 (Tenn. 1939), in its oral ruling, incorporated into the summary judgment order, finding that an express trust had been created.  Defendants' issue regarding *Ellis* and *Brunson* is essentially an assertion that the trial court incorrectly "identified and applied the most appropriate legal principles applicable" to its discretionary decision.  *See Lee Med.*, 312 S.W.3d at 524.  In its order denying the motion to alter or amend, the trial court, through its incorporated oral ruling, stated:  "There's not been a change in the law and I don't believe that I had an incorrect understanding of the law."  Upon thorough review of the record and applicable authorities, we conclude that the trial court did not abuse its discretion by declining to alter or amend the judgment based on this issue.

In its oral ruling incorporated into the summary judgment order, the trial court articulated the following, in relevant part, concerning its finding of an express trust:

> To this Court the issue is . . . more significantly was there an express or constructive trust created by the acts of [Decedent] and Edwin or [Decedent] separately?  It is not necessary for [a valid] trust [to] be in writing because a trust can be created orally unless the language of a written conveyance excludes the existence of a trust.  If the party seeks to create an oral trust, the party has to prove the oral trust by greater than preponderance of the evidence.  To prove a [parol] trust, the moving party must prove the trust with clear and convincing evidence as to overcome any opposing evidence.  This is the safeguard against fraud.  Here there are written documents that plaintiffs point to, and as such, they say that there are three elements for a valid express trust to be proven:  One – a trustee who holds trust property and who is subject to the equitable duties to deal with it for the benefit of the other; a beneficiary to whom the trustee owes the equitable duties to deal with the trust and identifiable trust property.  Express trusts are those which are created by the direct and positive acts of the parties by some writing or deed or will, but an express trust may be created by [parol].  To create an express trust there must be an explicit declaration of trust or circumstances which show beyond a reasonable doubt that a trust was intended to be created accompanying with an intention to create a trust followed by an actual conveyance or transfer.  When a holder of legal title expressly grants another individual the right to property, an oral trust can be established.

28

The plaintiffs in this case must show a grantor, Edwin [Sturdivant], who intended to create a trust, and they point to the 2004 letter, the subject property, one million dollars in bonds or the equivalent, a trustee, [Decedent], and beneficiary, his own family. An express trust does not have to be created in any particular form of words or conduct for the manifestation of intention.

In the *Ellis v. Ellis* case, 1990 Court of Appeals, the couple divorced, and they had two children. It was agreed the husband would provide funds for education in a reasonable manner. The children and mother filed a Complaint seeking specific performance of the contract, alleged contract. The petitioners alleged the husband had agreed to establish a trust and refused now to pay any money into it. The Court found the trust existed because the trustee was the husband, the beneficiaries were the children and there was an account. The Court concluded the husband had intent to create a trust because the husband created an account to deposit the funds for college.

In this case it is clear that Edwin's Will intended for [Decedent] to have the property. It has to be read in context of the 2004 and subsequent acts in which he reduced to writing. We do not have the benefit of [parol] testimony as to their statements mainly because of the dead man's statute, but in the document he made clear his hope, at least, that she would keep these funds, use the income for her support, and then she was to take action. He suggested a Will or a prenup so that any future husband would not get his children's money, and he wanted his children to have these funds after [Decedent] was done using them.

The Court finds that an express trust was created, and it is the Raymond James account. The plaintiff[s] had not elected to seek any remedy as to the home, and it is not in contest before this Court, and the parties' agreement to not pursue it is not binding on interpretation of the Raymond James account. The express trust is the Will leaving the funds to [Decedent] in the context of the 2004 letter setting out that she was to use the funds, the interest from them, and then it would go to his family, children or children and grandchildren.

29

In *Ellis*, which involved an express trust, this Court explained concerning the elements of a trust:

> The existence of a trust requires proof of three elements:  (1) a trustee who holds trust property and who is subject to the equitable duties to deal with it for the benefit of another, (2) a beneficiary to whom the trustee owes the equitable duties to deal with the trust property for his benefit, and (3) identifiable trust property.

*Ellis*, 1990 WL 19684, at *3 (citing G.G. Bogert and G.T. Bogert, THE LAW OF TRUSTS AND TRUSTEES § 1 (1984)); *see also Kopsombut-Myint Buddhist Ctr. v. State Bd. of Equalization*, 728 S.W.2d 327, 333 (Tenn. Ct. App. 1986) (noting the same proof requirements for the existence of a trust while explaining that although "[a] valid trust need not be in writing," "when a party seeks to establish an oral trust, it must do so by greater than a preponderance of the evidence") (internal citations omitted).

Defendants posit that the trial court erred in "relying" on *Ellis* because the *Ellis* facts are distinguishable from the instant action.  However, the trial court did not find the factual situations identical.  Instead, the trial court began with the requirements of a trust delineated in *Ellis* and found that instead of the type of written contract existing in *Ellis*, *see* 1990 WL 19684, at *1, the express trust here was created by the combination of Mr. Sturdivant's bequeathing the Account to Decedent in his Will and then setting forth his wishes in the 2004 letter for Decedent's use of the Account and interest during her lifetime with the remainder to be left to Mr. Sturdivant's descendants.  Defendants also argue that *Ellis* is distinguishable because the trustee, the husband, was also the grantor of the trust.  This Court in *Ellis* declined to consider a request made by the appellees that the husband would be removed as trustee because the request was made for the first time on appeal.  *Id.* at *5.  However, no mention is made in *Ellis* of a requirement that the trustee be one and the same as the grantor, and Defendants have offered no authority, nor has our research revealed any, for such a requirement.

In its oral ruling incorporated into the summary judgment order, the trial court did not cite *Brunson*, 125 S.W.2d 144, until it analyzed Plaintiffs' alternative claim of a constructive trust, stating in pertinent part:

> An alternative, it is argued that a constructive trust was created, and it is a construction of equity in order to satisfy the demands of justice.  It is a formula through which the conscience of equity finds expression.  When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity

30

converts into a trustee. A court of equity in dealing with creating a constructive trust is bound by no unyielding formula. A constructive trust is imposed, One, by fraud, actual or constructive – that's not applicable here – by duress or abuse of competence – that is not applicable here – by commission of wrong – not applicable – by any form of unconscionable conduct – that is not applicable – artifact, concealment or questionable means or who in [any] way against equity and good conscience either was obtained or holds a legal title which not in equity [should] in good conscience hold and enjoy.

All the actions of [Decedent] indicated that it was her intent to hold this property for the children. She was communicating with the children of Edwin. She was communicating with Edwin's children her intent for them to have the account. The funds that are in the account trace back to Edwin's separate funds that he allowed her in his Will to have and to keep to use for her benefit with the understanding that when she was done with it, it would go to his family.

In the case of *Brunson*, 1938, a husband devised to his Will his entire estate in 1915. In 1924 before the husband's death, the testator in the presence of his wife, his former law partner and the Clerk and Master of Chancery Court stated he would give his entire estate to his wife to avoid complications. He then had his law partner read the Will and stated that he and his wife agreed that after the husband's death, she would give his brother $1,000.00 and she would execute her Will devising one-half of the assets to her nieces and nephews and one-half of the assets to his nieces and nephews. The wife never executed a Will, and the husband's nieces and nephews filed suit to set up a [parol] trust based on the agreement in 1924, not the Will in 1915 but as a result of the statements that were made . . . in 1924. The Supreme Court of Tennessee found the [parol] evidence establishing a trust did not contradict the provisions of the Will.

This goes back to the probate of Edwin Sturdivant's Will. This trust does not contradict the Will of Edwin. The agreement was made after the execution of the Will. The 2004 letter was sent after the execution of Edwin's Will setting out what he wanted. [Decedent] accepted that by segregating the million dollars by stating that she was taking out an insurance policy to protect it and communicating to all the beneficiaries, his children, that they would be designated for that account.

31

Going back to *Brunson*, the Court finds the trust agreement was made nine years after the Will was executed, and the Court found a constructive trust established, leaving the husband's nieces and nephews one-half of the estate.

The 2004 letter and the actions of Edwin and [Decedent] indicate their mutual desire for the bonds to transfer to plaintiffs upon [Decedent's] death. The bonds are now traced it's undisputed to the Raymond James account. The Transfer of Death forms were not received by Raymond James. The Court finds that [Decedent] substantially complied with changing the beneficiary by getting the forms back and following up and asking them to send the information to her. Substantial compliance because she had segregated these funds over the years. She was complying with the 2004 letter and that there is an apparent mistake in the fact that the forms were lost in the mail or misplaced. A constructive trust is created. Equity requires it. The 2004 letter is consistent with the statements of [Decedent], who, as she said to [Ms. Kerr] in 2004, 2007 and 2015, a letter to [Ms. McCoy] in 2015 and a letter to Ms. [Sturdivant] in 2015, the children of Edwin.

Defendants assert that the trial court erred by "relying" on *Brunson* because in the instant action, witnesses were not presented as to any oral agreement between Mr. Sturdivant and Decedent and because the oral agreement in *Brunson* did not contradict the husband's will, in which he bequeathed his estate to his wife. *See Brunson*, 125 S.W.2d at 145-46. However, as explained in an earlier section of this opinion, we have determined that the trial court correctly found that Mr. Sturdivant's 2004 letter did not contradict his will because Mr. Sturdivant bequeathed the Account to Decedent for her use throughout her lifetime with the direction in the 2004 letter that he wished for her to bequeath the remainder of the Account to his children or children and grandchildren.

Moreover, Defendants have questioned the trial court's reference to *Brunson* in finding the existence of an express trust when, as Plaintiffs note, the trial court cited *Brunson* in analyzing the propriety of imposing a constructive trust, which was the type of trust at issue in *Brunson*. *See id.* at 148. "Constructive trusts are those which the law creates, independently of the intention of the parties, to prevent fraud or injustice." *XL Sports, Ltd. v. $1,060,000 Plus Interest Traceable to Respondent*, No. W2005-00689-COA-R3-CV, 2006 WL 197103, at *10 (Tenn. Ct. App. Jan. 26, 2006) (quoting 90 C.J.S. TRUSTS § 174 (2002)). As our Supreme Court has elucidated:

A trial court can impose a constructive trust

against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*Cent. Bus Lines, Inc. v. Hamilton Nat'l Bank*, 239 S.W.2d 583, 585 (Tenn. 1951). Courts have imposed constructive trusts in four types of cases:

(1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; (2) where the title to property is obtained by fraud, duress or other inequitable means; (3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; and (4) where a person acquires property with notice that another is entitled to its benefits.

*Roach v. Renfro*, 989 S.W.2d 335, 341 (Tenn. Ct. App. 1998) (quoting *Intersparex Leddin KG v. Al-Haddad*, 852 S.W.2d 245, 249 (Tenn. Ct. App. 1992)) (internal citation omitted).

*Coleman v. Olson*, 551 S.W.3d 686, 695 (Tenn. 2018).

In this case, the trial court explicitly did not find that Decedent had held the Account in violation of a duty or by any fraud or duress, but the court did find that Decedent's actions and writings evinced her compliance with Mr. Sturdivant's wishes in the 2004 letter and that because of "an apparent mistake in the fact that the forms were lost in the mail or misplaced" "equity require[d]" the creation of a constructive trust. The trial court thereby found applicable the fourth type of constructive trust, "where a person acquires property with notice that another is entitled to its benefits." *See Coleman*, 551, S.W.3d at 695 (quoting *Roach v. Renfro*, 989 S.W.2d 335, 341 (Tenn. Ct. App. 1998)).[7]

---

[7] Defendants posit that in contrast to the decisions cited in the summary judgment order, the trial court would have found a case with "some similarity to the instant case" in this Court's decision in *Ziyad v. Estate of Tanner*, No. W2007-01683-COA-R3-CV, 2008 WL 4830872 (Tenn. Ct. App. Nov. 6, 2008), which Defendants brought to the trial court's attention in their motion to alter or amend. Having reviewed *Ziyad*, a case involving a claim against an estate for an implied or resulting trust that rested

Mindful of the discretionary standard of review applicable here to Defendants' Rule 59.04 motion, *see Harmon*, 594 S.W.3d at 306, and our previous determination that Defendants have waived any issue concerning the trial court's grant of summary judgment apart from those issues raised in their Rule 59.04 motion, we decline to further review the trial court's findings in its summary judgment order concerning the existence of an express trust and alternative imposition of a constructive trust. We discern no abuse of discretion in the trial court's references to *Ellis* and *Brunson* in its summary judgment analysis. Moreover, we discern no abuse of discretion in the trial court's denial of Defendants' Rule 59.04 motion to alter or amend.

## VII. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. We remand this case for enforcement of the judgment and collection of costs below. Costs on appeal are taxed to the appellants, Lydia Henderson, Scott Douglas, and Benjamin Douglas.

_____
THOMAS R. FRIERSON, II, JUDGE

---

entirely on one letter of questionable authenticity, *see Ziyad*, 2008 WL 4830872, at \*9-10, we find no abuse of discretion in the trial court's omission of *Ziyad* in its Rule 59.04 analysis.